```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                   *

CEPHUS M. MURRELL, et al.,         *

        Plaintiffs
                                   *
v.                                               Civil Action No.:
                                                 MJG-01-CV-3560
MAYOR AND CITY COUNCIL OF          *
BALTIMORE, et al.

        Defendants                 *
             *      *      *      *      *      *      *
```

## MAYOR AND CITY COUNCIL OF BALTIMORE'S
## RESPONSE TO MOTION TO PLACE CASE ON ACTIVE DOCKET

The Mayor and City Council of Baltimore (the "City"), Department of Housing and Community Development of Baltimore City ("DHCD"), Sean S. Karimian ("Karimian"), Dennis T. Taylor ("Taylor") and Daniel P. Henson, III ("Henson"), Defendants, by Sandra R. Gutman, Chief Solicitor, their attorney, files the following response to the Motion to Place Case on Active Docket filed by Plaintiffs, Cephus M. Murrell and C. Murrell Business Consultant , Inc., in the above captioned action and asks that the motion be denied for the following reasons.

In August, 1992, several code violation notices were issued by the City against Plaintiffs' properties known as 562, 564, 566 Gold Street, Baltimore, Maryland.  On or about February 2, 1999, the properties, including an additional property known as 2201-03 Pennsylvania Avenue, were found by an inspector from the City's Department of Housing and Community Development ("DHCD") to be unsafe and unfit for human habitation and to constitute a safety hazard. As a result, the properties were condemned and a notice

of condemnation was posted at each property. On or about February 9, 1999, DHCD sent notice to Plaintiffs by certified mail, return receipt requested, that the properties had been condemned and would be razed, the cost of which would constitute a lien against the properties and a personal lien against Plaintiffs.

An administrative appeal was requested by Plaintiffs and was granted. A hearing was held at which Plaintiffs, their counsel and a witness appeared and were heard as were several city inspectors who had knowledge of the property. An administrative decision issued at the conclusion of the hearing upheld the demolition notice advising that because of Plaintiffs' failure to comply with the violation notices, the properties continued to constitute a safety hazard. Subsequent to that decision, the properties were demolished and a lien for payment of the cost of the demolition was placed against both Plaintiffs and the property.

Plaintiffs appealed DHCD's decision to the Circuit Court for Baltimore City where, pursuant to a hearing, the decision of DHCD was affirmed. Plaintiffs appealed the circuit court decision to the Maryland Court of Special Appeals and in its brief before that court, the City filed a Motion to Dismiss, asserting that because the appeal was not statutorily prescribed under Section 123.7 of the Baltimore City Building Code, the Court of Special Appeals lacked jurisdiction to entertain the appeal. In an unreported Opinion filed on June 4, 2001, the Court of Special Appeals dismissed the appeal on the grounds of lack of jurisdiction.

Plaintiffs filed a Petition for Writ of Certiorari in the Court of Appeals of Maryland which was granted by the Court in the case of *Cephus M. Murrell, et al. v. Mayor and City Council of Baltimore, et al.*, September Term, 2001, No. 72. At the same time that the appeal was pending before the Court of Appeals, Plaintiffs filed an action for damages along with a Fourteenth Amendment Due Process claim. Pursuant to a request by Defendants, the City and Potts & Callahan, Inc. ("P&C"), the case was removed to this Honorable Court. A Motion to Stay further proceedings in this Court until the Court of Appeals had issued a judgment was filed by the Defendants on May 8, 2002. As a result, this Court Ordered that the case be placed on the inactive docket and that all activity be suspended until December 31, 2003.

In an Opinion filed on July 30, 2003, the Court of Appeals reversed the judgment of the Court of Special Appeals and in its Mandate "remanded the case to that court with directions to reverse the judgment of the Circuit Court for Baltimore City and to remand the case to the Circuit Court with further directions to reverse the decision of the Department of Housing for further proceedings consistent with" the Court of Appeals' Opinion. *Murrell v. Mayor and City Council of Baltimore*, 376 Md. 170 (2003).

On or about September 10, 2003, Howard J. Schulman, Plaintiffs' counsel, wrote to Your Honor requesting that the case pending in this Court be reopened. While the City was not provided with notice of Mr. Schulman's request, Defendant P&C did receive such notice and by a letter dated September 26, 2003,

3

P&C's counsel, Jeffrey Kotz, opposed the reopening of the case. Although Mr. Kotz gave several reasons for his opposition, he principally objected because the underlying issue in the case, *i.e.* whether the City properly ordered the demolition of the structure, still remained open and was yet to be finally decided. Thus, until such time as a final administrative decision was rendered, Plaintiffs' claims for damages could not be heard.

By an Order and Memorandum dated September 29, 2003, this Court agreed with Mr. Kotz that the case must first be "fully resolved" before Plaintiffs' claims for damages can be reopened. This Court thus ordered that all activity on the case be suspended until December 31, 2005. Not being satisfied with this Court's ruling, Plaintiffs have now filed a motion requesting that the case be placed on the active docket.

In requesting that this case be returned to the active docket, Plaintiffs' argue that "[t]here would appear to be nothing to be gained at this juncture from the administrative process, other than perhaps an administrative *cover-up* of what already occurred some four plus years ago." (Emphasis added.) Plaintiffs' motion,¶ 2. In short, Plaintiffs essentially request that this Court disregard the Court of Appeals' mandate that the case be remanded to DHCD for further proceedings. That mandate essentially requires that Plaintiffs exhaust their administrative remedies.

However, the Court of Appeals, in its wisdom, is in obvious disagreement with Plaintiffs' argument where it clearly determined that the case must be remanded to DHCD for further

4

administrative review. Therefore, before any further action can be taken before this Court, Plaintiffs must comply with the Court of Appeals' ruling and exhaust their administrative remedies .

In *Maryland Reclamation Associates, Inc. v. Harford County*, 342 Md. 476, 493 (1996), the Maryland Court of Appeals stated:

> Where a legislature has provided an administrative remedy for a particular matter, even without specifying that the administrative remedy is primary or exclusive, this Court has 'ordinarily construed the pertinent [legislative] enactments to require that the administrative remedy be first invoked and followed' before resort to the courts. *Citations omitted.* When the legislative body expressly states that the administrative remedy is primary or exclusive or must be exhausted, the mandatory nature of the exhaustion requirement is underscored. Such express language 'is totally inconsistent with the notion that the [administrative agency's] jurisdiction over [the matter] can circumvented." *McCullough v. Wittner,* 314 Md. 602, 609 (1989).

*Maryland Reclamation Associates, Inc. v. Harford County, supra,* at 493.

In the present case, the Court of Appeals clearly embraced that doctrine by remanding this case to the agency so that it could proceed with a proper hearing. Even though they were victorious in their appeal, Plaintiffs quite clearly disagree with the Court's ultimate judgment and now try to convince this Court that it would be futile to return to DHCD.

Plaintiffs thus contend that notwithstanding the rulings of both the Court of Appeals and this Honorable Court, the requirement that they exhaust their administrative remedies should be excused under the futility doctrine, an exception to the exhaustion requirement. They claim that any further administrative review will be futile because of the so-called

"administrative cover-up of what already occurred some four plus years ago."

The futility doctrine was enunciated in *Glover v. St. Louis-S.F.R. Co.,* 393 U.S. 324 (1969), a case which involved a racial discrimination claim by a group of union employees against their employer, the St. Louis-San Francisco Railway Company and their union. After repeated complaints to the company and the union that they were denied promotions because of racial discrimination proved pointless, the employees filed a complaint in the United States District Court. *Id.* at 324.  The railroad and the union filed a motion to dismiss the complaint on the grounds that, among other things, the employees had failed to exhaust their administrative remedies as provided by their collective bargaining agreement. That motion was granted by the district court and affirmed on appeal by the United States Court of Appeals for the Fifth Circuit.

The United States Supreme Court granted certiorari and held that because "a formal effort to pursue contractual or administrative remedies would be absolutely futile," the employees were not required to exhaust their administrative remedies before seeking justice in a court of law. *Id.* at 331. The Court explained that an exception to the exhaustion doctrine exists where an effort to exhaust the administrative remedies would be wholly futile. *Id.* at 330. (citing *Vaca v. Sipes,* 386 U.S. 171 (1967). In reaching its decision, the Court relied on its decision in *Steele v. Louisville & Nashville R.R. Co.,* 323 U.S. 192, 206 (1944), holding that employees alleging racial

6

discrimination are not required to submit their grievance to "a group which is in large part chosen by the [defendants] against whom their real complaint is made." *Glover,* 393 U.S. at 330 (citing *Steele,* 323 U.S. at 206).

In *Dearden v. Liberty Medical Center,* 75 Md.App. 528 (1988), however, the Maryland Court of Special Appeals held that *Glover* was inapplicable to an employee who failed to take advantage of a "multi-step grievance procedure" in her contract before filing suit. Because her complaint was with the president as well as the chief financial officers of her company, she claimed that using the company grievance procedure would have been an exercise in futility. The Court disagreed, explaining that the futility exception in *Glover* is "a narrow one that must be pled with precision and established at each level of the grievance mechanism." *Id.* at 534. The Court further explained that to fall within the narrow exception, the futility of the administrative remedy "must clearly appear beyond mere conclusionary language in a complaint, for otherwise the doctrine of exhaustion would be dissipated by mere form and the door to the courts could be opened by prediction rather than by jurisdictional fact." *Dearden,* 75 Md. App. at 534 (quoting *Transport Workers Union of America v. American Airlines, Inc.,* 413 F.2d 746, 751 (10th Cir. 1969).

In the instant case, Plaintiffs fail to adequately explain why they cannot comply with the Court of Appeals' decision and exhaust their administrative remedies as ordered by that court. In an effort to explain their reasons for ignoring

7

the Court of Appeals' Mandate, Plaintiffs merely assert that there is "nothing to be gained at this juncture from the administrative process." *See* ¶ 2, Plaintiffs' motion. However, the Court of Appeals obviously believes otherwise.

Moreover, it appears as if Plaintiffs' believe that their request for monetary relief in this Court is a foregone conclusion and that compliance with the Court of Appeals' requirement that they again participate in the administrative process is unnecessary and a waste of their time. However, the central issue in this case has always been the propriety of the administrative hearing and the agency's decision.[1] More importantly, the Court of Appeals clearly believes that a remand to DHCD is necessary so that the agency can determine whether, pursuant to the evidence presented, demolition of the properties was properly ordered. Until such administrative determine is made, however, the issue of damages for wrongful demolition is not ripe for review.

It is important to remember that the Court of Appeals' decision is based solely on Plaintiffs' argument that their initial claim, instead of being a petition for judicial review[2], was a claim for mandamus relief. Although the Court of Special Appeals disagreed with that ploy, the Court of Appeals thought otherwise, determining that Plaintiffs had in fact requested a mandamus action in order to compel the agency to conduct a

---

[1] Plaintiffs have long maintained that an administrative hearing was never held, arguing instead that the hearing was nothing more than a "meeting" which they attended at which several city personnel were also present.
[2] The administrative appeal filed by Plaintiffs in the circuit court was titled as a petition for judicial review.

proper hearing and to make a ruling based on the evidence presented at that hearing. Thus, in accordance with the Plaintiffs own request for mandamus relief, the Court of Appeals remanded the case to DHCD for further action. Incredibly, and in spite of the appellate court's decision in agreement with Plaintiffs' theory of the case, Plaintiffs now ask this Court to ignore the Court of Appeals' ruling.  Indeed, if Plaintiffs were dissatisfied with the Court of Appeals' decision they should have requested reconsideration from that Court, explaining the position that they now advance before this Court. Plaintiffs' failure to do so means that the Court of Appeals' mandate must be followed, and until the case is remanded to DHCD where a hearing will be held and a new decision rendered, this Court is precluded from considering the issue of money damages. The Court's Order placing the case on inactive status through December 31, 2005, is therefore correct and Plaintiffs' motion should be denied.

It is apparent from the Court of Appeals' decision and the remedy mandated by that Court, that an administrative hearing must now be held, inclusive of notice and the rendering of a decision by the agency. Based on the evidence presented, DHCD can either affirm its earlier decision finding that the properties were properly demolished, or it could find that its prior decision was incorrect. If the latter occurs, Plaintiffs could conceivably then bring their claim for monetary damages. However, until the Court of Appeals' decision has been complied with and all administrative relief has been exhausted, Plaintiffs are

9

precluded from asserting their claim for damages. *See Maryland Reclamation Associates, supra,* at 493.

In sum, Plaintiffs have requested relief by way of mandamus and mandamus they have gotten. This Court cannot simply ignore the ruling of the Court of Appeals. In accordance with that decision, the underlying issue in this case has yet to be determined and until it is, the issue of damages, if in fact damages are appropriate, must wait.

WHEREFORE, for the reasons stated herein, and because DHCD is required to hold an administrative hearing and to reach a decision regarding the propriety of the City's demolition of the structures which in turn will effect the outcome of any proceeding now pending before this Court, Plaintiffs' Motion to Place Case on the Active Docket must be denied.

/s/
Sandra R. Gutman
Chief Solicitor
Baltimore City Department
of Law
143 City Hall
100 N. Holliday Street
Baltimore, Maryland 21202
410-396-3933

Attorney for Defendants